## CITY OF SEMINOLE v. MOORING.

No. 28661. March 28, 1939.

Rehearing Denied June 13, 1939.

Application for Leave to File Second Petition for Rehearing Denied July 11, 1939.

George E. Norvell and Woodson E. Norvell, for plaintiff in error.

John W. Whipple, Geo. C. Crump, and H. W. Carver, for defendant in error.

DANNER, J. The plaintiff, D. C. Mooring, brought suit against the city of Seminole to recover damages alleged to have been sustained by reason of defendant's negligence in failing to keep and maintain its streets in a safe and proper condition for public travel and use. In the petition it is alleged:

"That Second street in the city of Seminole, is, and was at all times hereinafter mentioned, an open, public highway extending through said city, and was an important and frequently traveled way.

"That said highway and said street is and was at all times hereinafter mentioned, under the control and supervision of said defendant, the city of Seminole; and that it was the duty of said defendant to keep and maintain said highway and street at all times in a safe and proper condition for public travel and use.

"That on the 17th day of May, 1934, and for a long time prior thereto said Second street at the point where it intersected Strothers street came to an abrupt end and on the north side of said Strothers street there was a steep, unguarded embankment of some fifteen or twenty feet and said street at said point was unprotected by barriers, guards, danger lights, or any warning or signal of any nature whatsoever that would put motorists on their guard, thus making said street unsafe and extremely dangerous to the life and limb of all motorists using the same; that said Second street had no warning sign or signal at the bottom of a hill just south of the north end of said street indicating that said street came to an abrupt end at the brow of said hill; of the condition of said street and said hill, its abrupt blind ending and unguarded embankment the defendant had actual notice or with the exercise of reasonable care and diligence could have ascertained the same, but the defendant, negligently, carelessly, and knowingly permitted and suffered said dangerous hazard to thus become and remain in said defective and dangerous condition.

"That on or about 11:30 a. m., on the 17th day of May, 1934, this plaintiff was proceeding carefully and lawfully along said Second street, driving his automobile, a 1930 model, Chevrolet coupe, going in a northerly direction on said street; that on said occasion plaintiff had every reason to believe that said highway and said street was safe and extended beyond the brow of said hill; there was no appearance of danger; there was no warning or danger signals at the bottom of the hill just south of the end of said Second street. That while plaintiff was driving and propelling his said automobile along said street, it was necessary for him to shift into second gear and accelerate his speed to ascend the hill at the north end thereof, and when

he came to the top of the said hill and not having been warned and not being aware of the end of said street or the precipice beyond the same, his car plunged headlong over said precipice, landing at the bottom thereof upside down and lodged against a tree; that by reason of the lack of warning or danger signals at the bottom of said hill on the north end of said Second street, and by reason of the speed necessary to use in ascending said hill with his automobile and by reason of the lack of warning or danger signal as he approached the top of said hill on said street and by reason of the lack of barriers or guards along said embankment, said plaintiff and plaintiff's automobile was violently precipitated and thrust over said precipice as hereinbefore alleged and sustained vital injuries to his person. * * *"

In its answer the defendant denies generally the allegations in the petition and affirmatively alleges contributory negligence in the plaintiff. The judgment, based on a jury verdict, was in favor of the plaintiff. From the judgment and order overruling its motion for a new trial the defendant appeals, assigning various grounds for reversal, which assignments are presented under the following propositions:

"The petition fails to state sufficient facts to charge the defendant municipality with any liability; the evidence offered by plaintiff was insufficient as against the demurrer thereto;

"Upon all the evidence, a verdict should have been directed in favor of defendant.

"Under the law and the evidence, the court should have refused to enter judgment upon the verdict of the jury."

The evidence shows that the plaintiff, a stranger to the streets of the defendant city, was driving north on Second street at a speed of approximately 30 miles an hour, and at the intersection of Second street and Strothers avenue discovered that Second street ended abruptly immediately north of Strothers avenue; and in attempting to stop his automobile both the plaintiff and the car hurtled over an embankment 15 or 20 feet high into a tree on the north side of Strothers avenue, resulting in the injury complained of. The city limits of Seminole end at the center of Strothers avenue; an improved street 36 feet wide extending east and west intersecting with Second street. The embankment where the accident occurred is located 18 feet north of the center of Strothers avenue immediately outside the traveled portion of that thoroughfare.

Particularly, the defendant argues that it is not liable for the reason that it is not alleged in the petition, or shown in the proof, that the place where the injury occurred is within the city limits of the city; that under the circumstances the city owed no duty to the public, or to the plaintiff, to erect and maintain signs or barriers at the place where the accident occurred.

We have held that a municipality must exercise ordinary care to keep its sidewalks and streets in a reasonably safe condition, and is liable for injuries caused by the failure to do so. Town of Norman v. Teel, 12 Okla. 69, 69 P. 791; City of Stillwater v. Swisher, 16 Okla. 585, 85 P. 1110; Town of Canton v. Mansfield, 108 Okla. 60, 233 P. 1071; City of Tulsa v. Wells, 79 Okla. 39, 191 P. 186.

In Blashfield's Cyclopedia of Automobile Law & Practice, vol. 5, page 398, it is said:

"A municipality is bound to provide barriers or guards where the street itself is unsafe for travel by reason of the presence or the close proximity of excavations, embankments, deep water, or other pitfalls or dangers. This duty extends to dangerous places adjacent to as well as upon the highway.

"In determining whether it is necessary in a particular case, that a barrier or railing should be erected to make the highway safe, the true test is not the distance from the highway of the dangerous object or place, but whether a traveler, in passing along the highway and exercising ordinary care, would be subjected to such imminent danger that it would require a barrier or railing to make the place safe. * * *

"Whether a defect is so close to or so connected with the highway as to render traveling unsafe depends upon the facts in each particular case. Thus, an unguarded ditch two feet wide and almost as deep, at the side of the road, may be so connected with the road as to affect the safety of travelers." Citing: City of Indianapolis v. Moss (Ind.) 128 N. E. 857; Willis v. City of New Bern (N. C.) 132 S. E. 286; City of Phoenix v. Mayfield (Ariz.) 20 P. 2d 296; City of Beaumont v. Kane (Tex. Civ. App.) 33 S. W. 2d 234; Sweetman v. Green Bay (Wis.) 132 N. W. 1111; Williams v. City of Mexico (Mo. App. 34 S. W. 2d 992.

In the latter case it was held that city was liable where automobile, leaving a city at night, went over stone abutment at the end of an abandoned bridge 36 feet beyond the city limits; that city must maintain suitable barriers, where there are dan-

gerous places rendering streets unsafe for travelers. In the body of the opinion appears the following language.

"The only real question involved on this appeal is whether or not defendant city is liable for this injury which occurred outside the corporate limits. It is a general rule of law that a city is not liable for injuries which occur outside of the city limits. This rule, however, like others, has its exceptions under certain circumstances, and we think the facts of this case bring it within the exceptions to the rule. It was the duty of the city to keep its streets in a reasonably safe condition so that those using the streets would not be injured if they were exercising ordinary care, and it is frequently necessary for a municipality to guard against adjacent excavations and give warning and notice of any danger that might cause injury to those using said street or streets. Fox v. City of Joplin (Mo. App.) 297 S. W. 449, 451. It is also the duty of a municipality to erect and maintain suitable barriers where there are dangerous places, which, without such protection, would render the street unsafe and dangerous to travelers. Chance v. City of St. Joseph, 195 Mo. App. 1, 190 S. W. 24.

"In the case last cited, the facts were very similar to those in the instant case. It is true that in the Chance Case the accident happened inside the city limits. It was held there that it was the positive duty of the city to maintain a barrier across a public street where it abruptly ends at the very edge of a precipice. While the defendant city had no power or authority to make changes outside of the city limits, it did owe the duty to the traveling public to make its street safe. Was this a safe street? A street which continued right up to the very limits of the city and within 36 feet of a precipice of this kind, when it was very likely that people who were not thoroughly acquainted and familiar with the situation would attempt to leave the city over this street, especially as there was or had been a highway leading onto the bridge approach, was not a safe street. And while this dangerous condition was outside the city limits, it was so close thereto that it must have been apparent, or should have been, that this street where it ended at the corporate limits of the city was not safe for those exercising ordinary care in traveling upon said street. It was an invitation to continue on, and 36 feet is a short distance in which to stop an automobile when you have no knowledge of the dangerous situation, and may have no knowledge, even though you are exercising ordinary care, until you have gone over the embankment as plaintiff did."

Counsel for the defendant have not favored us with authorities from this court directly in point, nor have we found any from an independent investigation. We believe, however, that the conclusions reached in the decisions of the courts of other states hereinbefore cited enunciate the proper rules of law and are persuasive under the facts presented in the case at bar. While the cases of City of Oklahoma City v. Emily S. Meyers, 4 Okla. 686, 46 P. 552, and Sinclair Texas Pipe Line Co. v. Ross, 175 Okla. 435, 54 P.2d 204, are not directly in point, yet they are analogous to the instant case and the reasoning in those cases may be applied to this case.

In City of Oklahoma City v. Meyers an excavation was made on private property. This excavation was within three feet to six feet of the walk used by foot passengers. The excavation had been there about one year prior to the alleged injury. There were no barriers between the excavation and the street and no lights or other warnings of danger. The plaintiff Meyers, not knowing of the excavation and on a dark and rainy night, was traversing the footpath, and when she had reached Hudson street turned to go north and stepped into the excavation, sustaining injuries for which the jury returned a verdict in her favor. In this case the court quoted extensively from the decisions of various states and said:

"And we think it is equally well settled that where a city permits an excavation to exist within such close proximity to a street as to make it unsafe for a prudent person to use the same, and an injury results from no fault upon the part of such person, a recovery may be had. As to how close to the street the excavation must be in order to allow recovery, would, in most cases, be a question for the jury."

In Sinclair Texas Pipe Line Co. v. Ross the Sinclair Texas Pipe Line Company was granted a right of way across the Patterson farm. The employees established a road across the farm which was used by the public, even though it was not a publicly dedicated road. At a point approximately six feet north of the road the company excavated what was known as a "bell hole." The plaintiff Ross, while running up the road, fell into the bell hole and sustained serious injuries. In this case the court held that, "since the excavation was in close proximity to said road, the negligence of defendants became the proximate cause of his injury." The second syllabus of said case is as follows:

"Where a cause of danger to public travel exists on private land adjoining a public roadway, the liability for the injury from it depends on its dangerous character with reference to public travel, rather than to its exact location. The question whether it endangers public travel is as a general rule one of fact and not of law."

We have examined the authorities submitted by the defendant in its brief, particularly Kirk v. City of Muskogee, 183 Okla. 536, 83 P.2d 594. The authorities cited are not in point under the facts presented by the record here under consideration. In the Kirk Case it was sought to hold the city liable for its failure to maintain a stop sign on its street so as to apprise motorists approaching the intersection that they should stop before entering upon such intersection. In the body of the opinion we said:

"This court is committed to the rule that a municipality is liable for damages sustained from defects in its streets, but there is a clear distinction between the failure of a city to keep its streets in a safe condition as regards physical defects therein and failure or neglect in regulating traffic thereon."

It is apparent that the facts in the cited case are plainly distinguishable from the facts here under consideration.

The defendant complains of the reception of evidence offered by the plaintiff relating to other accidents at the point of the accident in the present case, and occurring prior thereto. The admission of this evidence was not error for the purpose of showing knowledge of dangerous conditions. City of Tulsa v. Whittenhall, 140 Okla. 160, 282 P. 322. See, also, annotations at 65 A. L. R. 380.

Additionally, the defendant contends that the amount recovered is grossly excessive. Plaintiff sued for $26,300 and recovered a judgment for $5,000. From an examination of the entire record, we are unable to say that the amount of the judgment is grossly excessive.

The judgment is affirmed.

BAYLESS, C. J., and OSBORN, CORN, and HURST, JJ., concur.